Slip Op. 13-33

UNITED STATES COURT OF INTERNATIONAL TRADE

UNION STEEL MANUFACTURING CO., LTD.,   :

                    *Plaintiff*,   :

      v.   :

UNITED STATES,   :   Court No. 07-00125

             *Defendant*,   :

      and   :

UNITED STATES STEEL CORPORATION,   :

          *Defendant-Intervenor*.   :

[Staying action pending appeal in <u>Union Steel v. United States</u>, 36 CIT ____, 823 F. Supp. 2d 1346 (2012), *appeal docketed*, No. 2012-1248 (Fed. Cir. March 6, 2012)]

Dated:  March 18, 2013

    <u>Donald B. Cameron</u>, Morris, Manning & Martin, LLP, of Washington, D.C., for Plaintiff Union Steel Manufacturing Co., Ltd. and former Co-Plaintiff Dongbu Steel Co., Ltd.  With him on the brief were <u>Julie C. Mendoza</u>, <u>R. Will Planert</u>, <u>Brady W. Mills</u>, and <u>Mary S. Hodgins</u>.

    <u>Claudia Burke</u>, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant.  With her on the brief were <u>Tony West</u>, Assistant Attorney General, Civil Division; and <u>Jeanne E. Davidson</u>, Director, Commercial Litigation Branch.  Of counsel on the brief was <u>Jonathan Zielinski</u>, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce.

    <u>Robert E. Lighthizer</u>, <u>Jeffrey D. Gerrish</u>, <u>Ellen J. Schneider</u>, and <u>Luke A. Meisner</u>, Skadden, Arps, Slate, Meagher & Flom LLP, of Washington, D.C., for Defendant-Intervenor.

# OPINION

RIDGWAY, Judge:

    This action is on remand from the Court of Appeals for the Federal Circuit.  *See* <u>Dongbu</u>

Steel Co. v. United States, 635 F.3d 1363 (Fed. Cir. 2011) ("Dongbu II").  In Dongbu I, plaintiffs

Dongbu Steel Co., Ltd. and Union Steel Manufacturing Co., Ltd. – Korean manufacturers and

exporters of the subject merchandise – contested the final results of the U.S. Department of

Commerce's twelfth administrative review of the antidumping duty order covering certain corrosion-

resistant carbon steel flat products from the Republic of Korea, arguing that the agency improperly

interpreted 19 U.S.C. § 1677(35), continuing to use zeroing in administrative reviews while

discontinuing the practice in investigations.  *See generally* Dongbu Steel Co. v. United States, 34

CIT ____, 677 F. Supp. 2d 1353 (2010) ("Dongbu I"), *vacated*, 635 F.3d 1363 (Fed. Cir. 2011)

("Dongbu II").[1]  Dongbu I rejected the Korean manufacturers/exporters' challenge to Commerce's

use of "zeroing" in administrative reviews,[2] denied their Motion for Judgment on the Agency

Record, and sustained Commerce's Final Results.  *See generally* Dongbu I, 34 CIT at ____, 677 F.

Supp. 2d at 1362-66.[3]  Plaintiff Union Steel appealed, and the Court of Appeals vacated and

remanded.  *See* Dongbu II, 635 F.3d at 1365, 1373.

        Following the Court of Appeals' issuance of its mandate, a Motion for Scheduling of Status

---

[1]*See also* Notice of Final Results of the Twelfth Administrative Review of the Antidumping Duty Order on Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea, 72 Fed. Reg. 13,086 (March 20, 2007); Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea; Notice of Amended Final Results of the Twelfth Administrative Review, 72 Fed. Reg. 20,815 (April 26, 2007).

[2]As the Court of Appeals has explained, "[z]eroing is the practice whereby the values of positive dumping margins are used in calculating the overall margin, but negative dumping margins are included in the sum of margins as zeroes." JTEKT Corp. v. United States, 642 F.3d 1378, 1383 (Fed. Cir. 2011) (*citing* Dongbu II, 635 F.3d at 1366).

[3]Familiarity with Dongbu I and Dongbu II is presumed.

Conference was filed by plaintiff Union Steel and its former co-plaintiff Dongbu.  *See* Motion for

Scheduling of Status Conference (July 25, 2011).  Thereafter, Union Steel was asked to confer with

the other parties concerning the language of a proposed order remanding this matter to Commerce,

and to advise as to the parties' views concerning the right (if any) of Dongbu and former defendant-

intervenor ArcelorMittal USA Inc. to participate in this action on remand from the Court of Appeals

in light of the fact that Dongbu and ArcelorMittal did not participate in the appeal of Dongbu I.  *See*

Order (July 28, 2011).

     The parties are not in agreement as to the proper scope of the remand to Commerce.  *See*

Summary of Plaintiff Union Steel's Rationale For Its Proposed Remand Order at 1-2; Defendant's

Response to the Court's July 28, 2011 Order at 1-2, 3; [U.S. Steel] Response to the Court's Order

of July 28, 2011 at 1.  Specifically, the Government and U.S. Steel argue for language that narrowly

"tracks the Federal Circuit's final instructions regarding the scope of the remand."  Defendant's

Response to the Court's July 28, 2011 Order at 3; *see also* [U.S. Steel] Response to the Court's

Order of July 28, 2011 at 2.  Emphasizing that the Court of Appeals "did not remand with any

instructions," the Government and U.S. Steel "oppose inclusion [in the order remanding this matter

to the agency] of any language characterizing the [Court of Appeals'] remand in any way."  *See*

Defendant's Response to the Court's July 28, 2011 Order at 3; *see also* [U.S. Steel] Response to the

Court's Order of July 28, 2011 at 2.  In contrast, Union Steel contends that the language proposed

by the Government and U.S. Steel  concerning the scope of the remand would improperly "give[]

[Commerce] a blank check to interpret the Federal Circuit's decision in Dongbu Steel."  Summary

of Plaintiff Union Steel's Rationale For Its Proposed Remand Order at 2.  Union Steel argues instead

for "a remand order that includes instructions for Commerce to follow the holding of the Federal

Circuit in Dongbu Steel as further followed and endorsed by its later decision in [JTEKT Corp. v.

United States, 642 F.3d 1378 (Fed. Cir. 2011)]." *See* Summary of Plaintiff Union Steel's Rationale

For Its Proposed Remand Order at 3-4.  Union Steel contends that the language of its proposed

remand order "is specific and faithfully tracks the holdings of those cases by directing Commerce

to do precisely what the Federal Circuit directed: Either adopt a consistent interpretation of 19 U.S.C.

§ 1677(35) [the zeroing statute] or else provide an explanation of why such an inconsistent

interpretation is reasonable." *See* Summary of Plaintiff Union Steel's Rationale For Its Proposed

Remand Order at 4.

   The parties are even more deeply divided on the issue of former plaintiff Dongbu's right to

continue to participate in this action on remand from the Court of Appeals. *See generally* Summary

of Plaintiff Union Steel's Rationale For Its Proposed Remand Order at 2; Defendant's Response to

the Court's July 28, 2011 Order at 2; [U.S. Steel] Response to the Court's Order of July 28, 2011

at 2.  Specifically, Dongbu contends that it is entitled to participate. *See generally* Plaintiff Dongbu

Steel Co., Ltd.'s Brief Regarding Its Participation in This Action on Remand; Plaintiff Dongbu Steel

Co., Ltd.'s Response to the Court's September 28, 2011 Order.  Dongbu reasons, among other

things, that, because the Court of Appeals vacated (rather than reversed) the trial court's judgment,

the action "remains pending as to all parties."  Plaintiff Dongbu Steel Co., Ltd.'s Response to the

Court's September 28, 2011 Order.  In contrast, the Government and U.S. Steel maintain that

Dongbu "is not entitled to participate in [this] remand proceeding."  Defendant's Response to the

Court's July 28, 2011 Order at 2; *see generally id*. at 2-4; [U.S. Steel] Response to the Court's Order

of July 28, 2011 at 2-4.  According to the Government and U.S. Steel, "Dongbu's participation in this case ended when it did not appeal this Court's decision [*i.e.*, Dongbu I] to the Federal Circuit." Defendant's Response to the Court's July 28, 2011 Order at 2; *see generally id.* at 2-4; [U.S. Steel] Response to the Court's Order of July 28, 2011 at 2-3.  The Government and U.S. Steel conclude that Dongbu therefore "is no longer a party in this case."  Defendant's Response to the Court's July 28, 2011 Order at 2; *see generally id.* at 2-3; [U.S. Steel] Response to the Court's Order of July 28, 2011 at 2-4.[4]  Union Steel has taken no position on Dongbu's participation.  ArcelorMittal has advised that it does not seek to participate further in this action.  *See generally* [ArcelorMittal] Response to the Court's Order of September 28, 2011.[5]

With the issues of Dongbu's right to participate and the proper scope of the remand to Commerce in this matter still pending, a decision issued in Union Steel, another case before this Court, in which the court sustained Commerce's rationale for using zeroing in administrative reviews, but not in certain types of investigations.  *See* Union Steel v. United States, 36 CIT ____, 823 F. Supp. 2d 1346 (2012), *appeal docketed*, No. 2012-1248 (Fed. Cir. March 6, 2012).  The

---

[4]*See also* Defendant's Response to the Court's September 28, 2011 Order at 1, 4-8; Brief of Defendant Intervenor United States Steel Corporation Pursuant to the Court's Order of September 28, 2011 at 1, 3-9.

[5]*See also* Defendant's Response to the Court's July 28, 2011 Order at 2 (advising that "ArcelorMittal has informed the rest of the parties that it does not wish to participate" in proceedings on remand from the Court of Appeals); Summary of Plaintiff Union Steel's Rationale For Its Proposed Remand Order at 2 n.1 (stating that ArcelorMittal "confirmed by e-mail that [it] does not intend to participate in the remand proceedings before this Court"); [U.S. Steel] Response to the Court's Order of July 28, 2011 at 2 n.1 (setting forth U.S. Steel's "understanding that ArcelorMittal does not intend to participate in the remand proceedings"); Order (Oct. 11, 2012) (directing that "if ArcelorMittal contends that it continues to be a party to this action, it shall file notice . . . to that effect" on or before specified date).

judgment in <u>Union Steel</u> was promptly appealed.  *See id.*  In the meantime, parties in other cases

involving zeroing in the context of an administrative review began seeking stays pending a final

appellate determination on the issue.  *See, e.g.*, <u>SeAH Steel Corp. v. United States</u>, Consol. Court

No. 11-00226 (CIT March 5, 2012) (order granting plaintiffs' motion for stay, notwithstanding

defendant's opposition, where defendant-intervenors did not object); Order (March 13, 2012), <u>MCC</u>

<u>EuroChem v. United States</u>, Court No. 11-00450 (CIT March 13, 2012) (order granting plaintiff's

motion for stay, notwithstanding defendant's opposition, where defendant-intervenors did not

object).  Recognizing that – as in the other cases in which stays were issued – a final determination

in <u>Union Steel</u> is likely to be largely, if not wholly, determinative of the zeroing issue here,

resolution of the parties' disagreement as to the scope of the remand to Commerce was deferred in

the interests of judicial economy and conserving the resources of the parties.

      In the intervening months, stays pending a final and conclusive determination in <u>Union Steel</u>

have issued in a growing number of actions, including actions in which some parties opposed the

entry of a stay.  *See, e.g.,* <u>Apex Exports v. United States</u>, 36 CIT ____, ____, 2012 WL 3205488 at

* 1 (2012) (entering stay over opposition of plaintiffs and defendant, where defendant-intervenor

"defer[red] to the Court on the appropriateness of a stay"); <u>Papierfabrik August Koehler AG v.</u>

<u>United States</u>, 36 CIT ____, ____, 2012 WL 6136890 at * 1 (2012) (entering stay favored by

defendant-intervenor, over opposition of plaintiffs and defendant); <u>JTEKT Corp. v. United States</u>,

36 CIT ____, ____, 2012 WL 2001379 at * 1-2 (2012) (entering stay supported by all plaintiffs, over

objections of defendant and defendant-intervenor); <u>JTEKT Corp. v. United States</u>, 36 CIT ____,

____, 2012 WL 2000993 at * 2 (2012) (entering stay supported by all plaintiffs, over objections of

defendant and defendant-intervenor); NSK Bearings Europe Ltd. v. United States, 36 CIT ____,

____, 2012 WL 2001745 at * 1-2 (2012) (granting plaintiffs' motion for stay notwithstanding

opposition of defendant and defendant-intervenor); SKF USA Inc. v. United States, 36 CIT ____,

____, 2012 WL 1999685 at * 1-2 (2012) (granting plaintiffs' motion for stay notwithstanding

opposition of defendant and defendant-intervenor); NTN Bearing Corp. of Am. v. United States, 36

CIT ____, ____, 2012 WL 1999645 at * 1 (2012) (granting motion for stay filed by plaintiffs and

plaintiff-intervenors, supported by defendant-intervenor but opposed by defendant); NSK Corp. v.

United States, 36 CIT ____, ____, 2012 WL 1999641 at * 1-2 (2012) (granting motion for stay filed

by plaintiffs and plaintiff-intervenors, over objections of defendant and defendant-intervenor); SKF

USA, Inc. v. United States, Court No. 11-00343 (March 21, 2012) (order entering stay where no

party objected); myonic GmbH v. United States, Court No. 11-00349 (CIT March 21, 2012) (order

entering stay where no party objected); Schaeffler Italia S.R.I. v. United States, Court No. 11-00380

(CIT March 21, 2012) (order entering stay where no party objected).[6]

---

[6]In at least one action, the Government argued against entry of a stay by asserting that
"ordering a stay would create a 'significant administrative burden' for the court and the defendant,
predicting a 'deluge when all cases stayed pending Union Steel or other zeroing apeals become
simultaneously ripe for adjudication.'" Papierfabrik, 36 CIT at ____, 2012 WL 6136890 at * 4. But
the court there concluded that, to the contrary, the effect of a stay would be to "streamline and
simplify resolution of the zeroing issue, avoiding unnecessary remands and appeals." Id., 36 CIT
at ____, 2012 WL 6136890 at * 4.

     To be sure, applications for stays have been denied in similar circumstances in some other
pending actions. See, e.g., Fischer S.A. Comercio, Industria and Agricultura v. United States, Court
No. 11-00321 (CIT Oct. 18, 2012) (order denying plaintiffs' motion for stay of all further
proceedings where, inter alia, action involved two claims in addition to plaintiffs' challenge to
zeroing, and where defendant and defendant-intervenors opposed stay).

     It is, however, black letter law that "the power to stay proceedings is incidental to the power

In some actions, stays pending a final determination in <u>Union Steel</u> have been entered on the motion of one or more parties.  In other actions, however, the stay has been at the instigation of the court itself.  *Compare*, *e.g.*, <u>NSK Bearings Europe</u>, 36 CIT at ____, 2012 WL 2001745 at * 1 (granting plaintiffs' motion for stay); <u>NTN Bearing Corp. of Am.</u>, 36 CIT at ____, 2012 WL 1999645 at * 1 (granting motion for stay filed by plaintiffs and plaintiff-intervenors); *with* <u>Papierfabrik</u>, 36 CIT at ____, 2012 WL 6136890 at * 1 (entering stay at court's own instigation); <u>SKF USA, Inc.</u>, Court No. 11-00343 (CIT Sept. 7, 2011) (same); <u>myonic GmbH</u>, Court No. 11-00349 (CIT March 21, 2012) (same); <u>Schaeffler Italia S.R.I.</u>, Court No. 11-00380 (CIT Sept. 22, 2011) (same).

Stays have been entered overruling a wide range of objections.  For example, in a number of actions, the Government has argued that the plaintiff(s)/movant(s) have failed to demonstrate that proceeding with litigation will entail "clear hardship."  In entering stays in such cases, courts have noted that the Government's argument misconstrues the applicable legal standard, which requires that an applicant for a stay establish "clear hardship" only where "there is . . . a fair possibility that the stay for which he prays will work damage to some one else."  *See*, *e.g.*, <u>Papierfabrik</u>, 36 CIT at ____, 2012 WL 6136890 at * 4 (*quoting* <u>Landis</u>, 299 U.S. at 255); <u>NSK Corp.</u>, 36 CIT at ____, 2012 WL 1999641 at * 2 (same).  In none of the cases to date has a party opposing a stay even alleged – much less demonstrated – the possibility of any concrete, cognizable harm attendant to the stay.

---

inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for for counsel, and for litigants."  <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 254 (1936).  Thus, the decision as to whether, "[w]hen and how to stay a proceeding is within the sound discretion of the trial court."  <u>Cherokee Nation of Oklahoma v. United States</u>, 124 F.3d 1413, 1416 (Fed. Cir. 1997).

In some actions, parties have opposed stays based on the procedural status of the specific case at issue. However, stays have been entered even where actions are in quite advanced stages of litigation, much as stays have been entered in actions where court proceedings have just been commenced. *Compare*, *e.g.*, Papierfabrik, 36 CIT at ____, 2012 WL 6136890 at * 1 (explaining that, in the course of hearing oral argument, "the court requested that the parties make submissions on the question of whether the court should stay this action pending the final disposition of Union Steel"); NSK Corp., 36 CIT at ____, 2012 WL 1999641 at * 3 (rejecting defendant-intervenor's argument that "unlike other cases stayed . . . pending the resolution of Union Steel, this case is under submission and awaiting the court's judgment"; explaining that "[t]he advanced stage of this litigation does not preclude a stay, and defendant-intervenor has failed to identify any harm that a stay would cause"); NSK Bearings Europe, 36 CIT at ____, 2012 WL 2001745 at * 3 (same); JTEKT Corp., 36 CIT at ____, 2012 WL 2001379 at * 3 (noting argument of defendant-intervenor in that case that stay would be inappropriate in light of advanced stage of litigation, where "'the parties have completed briefing, have commented on the [first] remand results, and are awaiting judgment of the court only'"); *with* myonic GmbH v. United States, Court No. 11-00349 (CIT March 21, 2012) (action stayed after entry of scheduling order, before filing of any briefs); MCC EuroChem, Court No. 11-00450 (CIT March 13, 2012) (action stayed following submission of joint status report, before entry of order establishing briefing schedule).

Moreover, actions have been stayed notwithstanding the pendency of claims in addition to challenges to zeroing. *See*, *e.g.*, Papierfabrik, 36 CIT at ____ & n.1, 2012 WL 6136890 at * 1 & n.1 (indicating that "[p]laintiffs' complaint contains three claims, the third of which challenges the

Department's use of the 'zeroing' methodology"; the other two claims "challenge the failure of U.S. Department of Commerce . . . to disclose certain correspondence between members of Congress and the Secretary of Commerce" before issuance of final determination, as well as "the Department's decision not to adjust plaintiffs' home market prices to account for monthly home market rebates"); Apex Exports, 36 CIT at ____, 2012 WL 3205488 at * 2 (where complaint asserts three claims, rejecting defendant's argument that "'a decision from the Federal Circuit [in Union Steel] will have no bearing upon the legal merits' of the two remaining issues in this case"); JTEKT Corp., 36 CIT at ____, ____ n.4, 2012 WL 2001379 at * 2, * 1 n.4 (addressing defendant's argument "that a stay is inappropriate because 'in addition to Commerce's zeroing practice, the Court must resolve a number of other issues' relating to the Department's model-match methodology"); JTEKT Corp., 36 CIT at ____, ____ n.4, 2012 WL 2000993 at * 3, * 1 n.4 (similar); SKF USA Inc., 36 CIT at ____, ____ n.2, 2012 WL 1999685 at * 3, * 1 n.2 (noting defendant's argument that stay is "inappropriate because this case involves a second issue, plaintiffs' challenge to Commerce's 15-day liquidation policy"); NTN Bearing Corp. of Am., 36 CIT at ____ n.3, ____, 2012 WL 1999645 at * 1 n.3, * 3 (indicating that, in addition to challenge to zeroing, "[p]laintiffs bring two other claims," "contest[ing] . . . a U.S. Department of Commerce policy of issuing duty assessment and liquidation instructions . . . fifteen days after the publication of the final results" of an administrative review and "seek[ing] correction of what they claim is a ministerial error affecting the calculation of their credit expenses"); SKF USA, Inc., Court No. 11-00343 (CIT March 21, 2012) (entering stay, even though defendant's papers indicate that plaintiffs' complaint includes challenge to Commerce's policy of issuing liquidation instructions 15 days after publication of final results, in addition to challenge to

zeroing); <u>MCC EuroChem</u>, Court No. 11-00450 (CIT March 13, 2012) (entering stay, even though

plaintiff's motion for stay notes that complaint also raises a second "lesser" issue, in addition to

zeroing – *i.e.*, an issue concerning "treatment of freight revenue").[7]

      The case for entry of a stay obviously is even stronger where, as here, the action has never

involved any claim other than a challenge to Commerce's construction of the statute as to zeroing,

and where there exists an antecedent procedural issue (*i.e.*, former plaintiff Dongbu's right to

participate in these proceedings), which – like the zeroing issue – may well be mooted by <u>Union

Steel</u>.  Under these circumstances, there would be no apparent harm to any party as a result of a stay.

Indeed, as in the numerous other similar cases discussed herein, the entry of a stay pending a final

determination in <u>Union Steel</u> will promote the interests of judicial economy and conserve the

resources of the parties as well as the court.

      For all these reasons, further proceedings in this action shall be stayed until 30 days after the

final resolution of all appellate review proceedings in <u>Union Steel v. United States</u>, 36 CIT _____,

823 F. Supp. 2d 1346, *appeal docketed*, No. 2012-1248.

---

    [7]In a number of cases, stays have been entered notwithstanding arguments that the plaintiff(s) failed to exhaust their administrative remedies by properly raising their objections to zeroing at the agency level, or because the zeroing issue raised before the agency is not the precise statutory construction issue that is now before the Court of Appeals.  In most such instances, the court has deferred ruling on the exhaustion argument, reasoning that it may ultimately be mooted by a final determination in <u>Union Steel</u>.  *See, e.g.*, <u>NSK Bearings Europe</u>, 36 CIT at _____, 2012 WL 2001745 at * 2; <u>SKF USA Inc.</u>, 36 CIT at _____, 2012 WL 1999685 at * 2; <u>NTN Bearing Corp. of Am.</u>, 36 CIT at _____, 2012 WL 1999645 at * 3; <u>NSK Corp.</u>, 36 CIT at _____, 2012 WL 1999641 at * 2.  *But see* <u>Papierfabrik</u>, 36 CIT at _____, 2012 WL 6136890 at * 2-3 (discussing specific circumstances of case, and explaining that "the intervening judicial decision exception [to the exhaustion requirement] applies because there was a change in the controlling law on the use of zeroing" during relevant period).  In any event, there is no exhaustion argument here.

A separate order will enter accordingly.

                                            /s/ Delissa A. Ridgway
                                            Delissa A. Ridgway
                                            Judge

Dated:  March 18, 2013
          New York, New York